(C. D. 1020)

Eitinger Bead Co., Inc. *v.* United States

United States Customs Court, First Division

(Decided August 26, 1946)

*Siegel & Mandell* (*Sidney Mandell* of counsel); *John D. Rode*, associate counsel (*Jacob L. Klingaman* of counsel), for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*John J. McDermott*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

OLIVER, Presiding Judge: The protest in this case covers certain "Alabaster Beads (Translucent)" assessed with duty at 45 per centum ad valorem under paragraph 1503 of the Tariff Act of 1930 as beads in imitation of precious or semiprecious stones and claimed by the plaintiff to be properly dutiable at 35 per centum ad valorem, under the same paragraph as beads, not specially provided for.

The pertinent portions of paragraph 1503 read as follows:

PAR. 1503. * * * beads, * * * not specially provided for, 35 per centum ad valorem; * * * all other beads in imitation of precious or semi-precious stones, of all kinds and shapes, of whatever material composed, 45 per centum ad valorem: *Provided*, That the rates on spangles and beads provided in this paragraph shall be applicable whether such spangles and beads are strung or loose, mounted or unmounted * * *

The merchandise in question was described on the invoice accompanying the entry as "Alabaster Beads (Translucent)." Samples of the imported articles were received in evidence as collective exhibit 1. The beads are solid, spherical, glass balls, white and uniform in color, each containing a single perforation.

It is the Government's position that the beads involved imitate white agate, white onyx, white opal, chalcedony, or white moonstone, in color, brilliance, clearness, translucency, luster, cut, shape, and lead content.

At the hearing of the case, counsel for the plaintiff and counsel for the Government each produced four witnesses who had experience in buying and selling beads and imitation precious and semiprecious stones for periods ranging from 18 to 35 years. Counsel for the Government also produced as a witness a chemist attached to the United States customs laboratory at the port of New York.

The testimony of the witnesses for the plaintiff was consistent to the effect that the beads in issue did not imitate any precious or semiprecious stone in color, translucency, or luster. The witnesses were unanimous in stating particularly that the beads in issue did not imitate white agate or onyx, and, on being questioned, variously stated that the beads did not imitate chalcedony, opal, moonstone, or coral.

There is no dispute between the parties to this suit that all the stones above mentioned are semiprecious stones.

The testimony of the witnesses for the Government was also consistent but to the effect that the beads in issue did imitate semiprecious stones in color, translucency, and luster. The first witness for the Government stated that samples of the beads in issue (exhibit 1) imitate white onyx, white jade, white chalcedony, and genuine alabaster; that they also imitate white agate which in the trade is designated as of the same species as white onyx; and in answer to a question by the court as to what semiprecious stone exhibit 1 imitated, he stated:

* * * I'd say that's imitation alabaster. That's what we import it as [R. 79].

He also testified that alabaster is not a precious or semiprecious stone (R. 74).

The second witness for the Government stated that exhibit 1 imitates white onyx in color, luster, and translucency, and that he does not handle alabaster.

The third witness for the Government stated that: "To the full degree it would represent white agate * * *." On cross-examination, this witness stated that exhibit 1 could not imitate agate, onyx, opal, coral, and jade at one time (R. 104).

The last witness for the Government was of opinion that exhibit 1 resembled "white agate in every respect except, undoubtedly, composition" (R. 113). He stated also that exhibit 1 imitated alabaster.

Counsel for the Government placed in evidence an analysis of the beads in question (exhibit 2), and the chemist attached to the United States customs laboratory at the port of New York who made the test testified he found the beads to be lead glass beads containing 25.2 per centum lead oxide, which is the equivalent of 23.3 per centum metallic lead.

Whereas at the outset it was the Government's position that the beads in issue imitate white agate, white onyx, white opal, chalcedony, or white moonstone, the gist of the testimony of the Government's witnesses is that the beads imitate white agate or white onyx, which the record discloses are considered by the trade as the same species. Two of the Government's witnesses stated that the beads also imitated alabaster.

During the course of the trial the following illustrative exhibits were introduced and received in evidence:

Illustrative exhibit A, a piece of variegated agate
Illustrative exhibit B, a string of blue chalcedony beads
Illustrative exhibit C, three pieces of genuine white agate

Illustrative exhibit D, part of a fishing rod containing an inset of colored agate

Illustrative exhibit E, three pieces of genuine white onyx

Illustrative exhibit F, white plastic beads

For comparison with the merchandise in issue, illustrative exhibits A, B, and D are of little assistance to the court since they are of colors other than white, and color is one of the factors to be considered in determining whether the beads here involved are in imitation of precious or semiprecious stones.

By comparing exhibit 1 with illustrative exhibit C for color, we find exhibit 1 to be dead white whereas illustrative exhibit C is creamy white and possesses an element of iridescence. By comparison with illustrative exhibit E, two pieces of said exhibit are grayish white and contain distinct stripings, and the third piece is grayish white and possesses an element of iridescence.

As to luster and translucency, exhibit 1 does not have the luster of either illustrative exhibit C or F, and is more opaque than either illustrative exhibit C or E.

The words "agate" and "onyx" are defined as follows:

Funk & Wagnalls New Standard Dictionary 1942, p. 51:

agate. 1. mineral. A variegated waxy quartz in which the colors are in bands, in clouds, or in distinct groupings; also, a gem or precious stone made from this mineral. See *gem*. Different varieties are known from their composition or markings as

banded agate
clouded or mottled agate
dendrite agate or mocha-stone
fortification agate
jasper-agate
moss-agate and ruin-agate

Nearly all agates of commerce are artificially colored or stained, the layers being very absorptive. * * *

Webster's New International Dictionary, second edition, 1936:

agate. A variegated chalcedony, having its colors arranged in stripes or bands, or blended in clouds, or showing mosslike forms, etc. *Fortification agate, moss agate*, etc., are varieties.

chalcedony. A cryptocrystalline translucent variety of quartz, commonly of a pale-blue or grey color, uniform tint, and luster nearly like wax. Chalcedony of special or variegated color is known as carnelian, chrysoprase, agate, onyx, etc.

onyx. Chalcedony in parallel layers of different shades of color. It is used for making cameos.

While it is true that agate and onyx are sometimes mined in a pure white state or are dyed white and there may be a variation of shades of whiteness, agate and onyx in their most common form are noted for their variegated stripings, bandings, and mosslike forms, and lack

of uniformity. An imitation of an article is usually of the article in its commonly found form.

It has been held that "Color by itself is not sufficient to constitute an imitation of a precious or semiprecious stone * * *." *United States* v. *Judae & Co.*, 13 Ct. Cust. Appls. 164, T. D. 41024. Also, "Mere resemblance does not make an article an imitation of another." *Eitinger Bead Co.* v. *United States*, 13 Cust. Ct. 50, D. C. 867.

It is difficult to imagine any bead which would be an imitation of three or four semiprecious stones. There are certain characteristics peculiar to each stone, such as color, clearness, translucency, stripings, bandings, luster, brilliance, etc., which set it apart from all other stones and identify it as one of its own particular species. To be a true imitation, an article must be an imitation of a particular thing. It naturally follows and one of Government's witnesses stated that the beads in issue may not be an imitation of white agate, white onyx, white jade, white chalcedony, and of genuine alabaster, at one time.

While, as contended by counsel for the defendant, the lead content may be an important factor (*United States* v. *Judae & Co.*, *supra*), it is not the controlling factor in this case because other necessary factors of color, translucency, and luster are lacking (*Winter Bros.* v. *United States*, 19 C. C. P. A. 113, T. D. 45245).

Color, luster, and translucency of the genuine are some of the factors which a bead must possess in order to be an imitation of a precious or semiprecious stone. While there may be beads which possess one or more of these factors to the full degree, and the deficiency as to the other factors might not preclude the bead from being considered an imitation, in the case at bar where the bead falls short of the true color, the true luster, and the true translucency of a genuine agate or genuine onyx, etc., the beads in issue, in the condition as imported, cannot be said to be an imitation of an agate or an onyx or of any other named semiprecious stone.

Testimony at the trial that the beads may be used for various purposes is of little importance as their classification does not depend upon their use after importation. *Leonard Levin Co.* v. *United States*, 27 C. C. P. A. 101, C. A. D. 69.

Based on the record in this case and on an examination of the samples before us, we hold that the beads in issue, appearing on the invoice as alabaster beads (translucent) #1488/30″ 4m/m, 4½m/m, 5m/m, 5½m/m, 6m/m unif., and #1488/B 30″ 7m/m unif., are properly dutiable, as claimed, under the provision in paragraph 1503, Tariff Act of 1930, for beads, not specially provided for, at the rate of 35 per centum ad valorem. To this extent the claim of the plaintiff is sustained. Judgment will be rendered accordingly.