BEFORE THE FIRST DIVISION, MAY 31, 1950

**No. 54359.**—Perfection Import & Export Co. *v.* United States, protest 130672–K (New York).

OLIVER, Chief Judge: The merchandise in the suit at bar consists of a quantity of imitation pearl beads. It was assessed for duty under paragraph 1503, Tariff Act of 1930, as imitation pearl beads at 60 per centum ad valorem, or 60 per centum ad valorem plus one-half of 1 cent per inch, depending upon the value of the strings. The principal claim in this protest is that these beads are properly dutiable under the same paragraph of the act as beads, not specially provided for, at only 35 per centum ad valorem. The sole issue here is one of fact and is whether or not the beads in the condition as imported are imitation pearl beads.

The record indicates that the merchandise was purchased in China and stored in a warehouse during the period of the late war and subsequently exported to this country. There is no question but that the articles were manufactured and bought and sold as imitation pearl beads, but the importer contends that at the time of importation their condition had changed because some of the coating which converted these glass beads into imitation pearl beads had fallen off and that in the condition in which imported they were not commercially usable as imitation pearl beads.

Upon the trial the plaintiff called two witnesses, the first of whom was a partner in the plaintiff company. He testified that he had bought and sold imitation pearl beads in large quantities for the past 25 years and had seen them manufactured in Japan. He had bought this particular merchandise before the last war but was unable to ship it to the United States until 1946. During this period, the beads remained in the office of the plaintiff concern in Shanghai, China. The witness described the process of manufacturing imitation pearls as follows: The process is to take a foundation bead, that is, an alabaster bead, glass base, and dip it in a solution and let it dry; the dipping is to give the article a coating resembling a genuine pearl (R. 13). He stated that upon examining two of the cases containing the imported beads in the appraiser's stores at New York he found that the coating on them was coming off and that the beads could not be sold in the condition in which imported but that it would be necessary to remanufacture or recoat them. He then testified that the imported beads were in the condition represented by a sample in evidence (plaintiff's collective exhibit 1) and that some of the beads in that exhibit were of a dull color, of the type of bead that was originally used in making these imitation pearl beads. The witness agreed, however, that the majority of these imported imitation pearl beads still have the coating on them (R. 24). He further testified that he had not filed a claim for allowance with the seller of these beads.

The testimony of the plaintiff's witness as to what was done with these beads after importation was conflicting and confusing. He stated that he sold them to Rand Bros. of New York City but that they were returned for credit, apparently because of their poor condition. The reason for their return was not made clear in the record (R. 37–38). He first testified that the buyer knew the condition of the beads when they were sold (R. 27), then stated that the buyer did not know their condition (R. 39) and that they were returned in 1946 shortly after importation. The witness stated that the beads were disposed of to the same buyer in December 1948, so that approximately 2½ years elapsed between the time these imitation pearl beads were received and the time they were finally disposed of by the plaintiff (R. 33). The witness could not state what the buyer did to these beads after he received them a second time. He first stated that he sold this merchandise to Rand with the idea that the buyer was going to recoat them (R. 41) but subsequently stated that "We sold them to him as imitation pearls, not as foundation beads" (R. 42); that according to the sample shipment, they were not in perfect condition but were sold as imitation pearl beads even after the witness had seen the sample and before he had seen the merchandise and that the sample was in the same condition as the beads in question (R. 44–45).

The buyer of the merchandise in question testified that merchandise in the condition of plaintiff's collective exhibit 1 was not within the description of imitation pearl beads. He stated that beads like those in the sample in evidence must be cleaned and require a coating on them and treatment to be an imitation pearl bead.

The defendant introduced the testimony of one witness employed as assistant to the European buyer of a firm of manufacturers and importers of jewelry and imitation pearl beads. He stated that he had purchased merchandise such as is represented by plaintiff's collective exhibit 1 in Czechoslovakia and that he had seen imitation pearl beads made; that "There are two sorts of beads made to take the pearl coating. They are either spun or pressed. After the bead is finished, they are dipped into a solution which contains pearl essence and that gives it the coating." He testified that most of the beads in plaintiff's collective exhibit 1 are coated with pearl coating and that such merchandise would be called imitation pearl beads. He further stated that while his firm would not market merchandise in the condition of the sample as imitation pearl beads, he would designate

merchandise such as plaintiff's collective exhibit 1 as imitation pearl beads (R. 57).

The Government in its brief suggests that this case presents a situation for applicability of section 508, Tariff Act of 1930, with respect to commingled merchandise. That section provides that whenever merchandise subject to different rates of duty is imported commingled, the importer, if the quantity or value of each class of such merchandise is not readily ascertainable, may segregate such merchandise at his own risk and expense in order that the quantity and value of each part or class thereof may be ascertained. The record herein fails to indicate that any segregation of the involved merchandise was made. However, upon the record here before us we feel it unnecessary to pass upon this contention advanced by the defendant.

In support of the claim herein, counsel for the plaintiff in its brief cites *Eitinger* v. *United States*, 17 Cust. Ct. 56, C. D. 1020. In that case certain merchandise described on the invoice as "Alabaster Beads (Translucent)" was assessed with duty under paragraph 1503, Tariff Act of 1930, at 45 per centum ad valorem as beads in imitation of precious or semiprecious stones and was claimed dutiable under the same paragraph of the act at 35 per centum ad valorem under the provision for beads, not specially provided for. The *Eitinger* case, *supra*, however, was decided by this court upon a record which established that the beads in question were translucent alabaster beads which fell short of the true color, the true luster, and the true translucency of precious or semiprecious stones. The present record is distinguishable from the cited case. There is no question but that the articles before us were made as, sold as, and accepted in this country as, imitation pearl beads. That they had deteriorated in quality, were below standard, or that the plaintiff might well have had a claim against the shipper arising out of their poor quality, does not change the fact that the articles were and still are imitation pearl beads. In fact, the plaintiff's witness admitted that a majority of these imported pearl beads still had their coating on them. The proof adduced on behalf of the plaintiff's claim herein fails to overcome the presumption of correctness attaching to the collector's classification and further fails to establish that the imported articles, a sample of which is in evidence, are not imitation pearl beads. We are not unmindful of the rule that merchandise is dutiable in the condition in which imported but the record established here does not support the plaintiff's claim.

On the record before us, together with an examination of the sample in evidence, we hold that the articles in question are imitation pearl beads and are properly dutiable as assessed under paragraph 1503, Tariff Act of 1930, at either 60 per centum ad valorem, or at 60 per centum ad valorem plus one-half of 1 cent per inch, depending upon the value of the strings. The protest is overruled. Judgment will issue accordingly.